IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE CATALANO, | No. C 04-2649 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant.                              / | |

Now before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. On January 18, 2005, plaintiff Jennie Catalano moved for summary judgment on the pleadings. On February 17, 2005, defendant Jo Anne B. Barnhart, in her capacity as Commissioner of Social Security, filed an opposition to plaintiff's motion and a cross-motion for summary judgment. Plaintiff filed a reply memorandum on March 3, 2005. Pursuant to Civil Local Rule 16-1(e), the matter is submitted for decision by this Court without oral argument.

**I. BACKGROUND**

**A.     Procedural History**

Plaintiff Jennie Catalano applied for a period of disability and disability insurance benefits ("SSDI") under Title II of the Social Security Act (the "Act") on April 8, 1981. In a hearing decision dated May 17, 1982, Administrative Law Judge ("ALJ") Edward I. Staten

denied plaintiff's application for benefits, and there is no indication in the record that plaintiff appealed that decision. On June 1, 1984, plaintiff reapplied for SSDI, and the application was granted with a disability onset date of July 1983.[1]

As a result of a class action lawsuit, State of New York v. Sullivan, No. 83 Civ. 5903 (RLC) (S.D.N.Y. Dec. 4, 1989), aff'd, 906 F.2d 910 (2d Cir. 1990), the Social Security Administration was required to readjudicate class members' claims involving cardiovascular impairments. Plaintiff was a covered class member, and her 1981 claim was ordered to be reopened. Her application was denied initially and on reconsideration. On February 14, 2003, ALJ John J. Flanagan denied plaintiff's application for benefits, and his decision became final when the Appeals Council declined to review it on October 24, 2003. Although the Appeals Council set aside its earlier decision to consider additional information, it again denied review on April 27, 2004. On August 1, 2004, plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## B.      Factual Background

### 1. Plaintiff's Disability Claim

In her April 8, 1981 application, plaintiff alleged that beginning December 19, 1980, she became disabled and unable to work because of angina pectoris and arteriosclerotic heart disease ("ASHD"). Transcript of the Record of the Social Security Administration proceedings ("TR") at 251.

### 2. Plaintiff's Testimony

At the administrative hearing, plaintiff claimed that she could no longer work because of chest pain and other symptoms brought on by stress at work. Plaintiff described her job as a "Girl Friday" and that she "did everything that you could possibly do in an insurance agent's office." TR at 418. Plaintiff described her work as being very stressful because she managed 3,000 client files and there was a lot of pressure not to make a mistake. Plaintiff testified that due to chest pain, she was hospitalized in January 1980 and twice in February

---

[1] Defendant has been unable to locate plaintiff's prior Social Security files, which may have contained some relevant medical evidence.

1980. Plaintiff explained that she tried going back to work but stopped working in December 1980 because of her chest pains and other symptoms. Plaintiff stated that she attempted to go back to work on a part-time basis in 1982 and 1983, but she was unable to work on a sustained basis after December 1980.

### 3. Medical Evidence

#### a. Treating Physicians

Plaintiff's treating physician at Mercy Hospital, Rockville Centre, N.Y., Dr. Terence O'Flannagan, reported in February 1980 on plaintiff's chest pain and feelings of apprehension. Dr. O'Flannagan discharged plaintiff from the coronary care unit with a diagnosis of "chest pain, etiology undetermined, possible atypical coronary ischemic syndrome." TR 324. Dr. Stephen Richmond, a cardiologist, also examined plaintiff, and he noted that plaintiff's symptoms were difficult to evaluate, but could be anginal pectoris and arteriosclerotic heart disease.

Plaintiff was treated by Dr. Felix A. Monaco in March 1980. He gave his initial impression as "possible psychophysiological gastrointestinal reaction--rule out ulcer disease." TR at 347. Dr. Monaco noted that plaintiff underwent a stress test at Long Island Jewish Hospital, and the stress test was normal. On July 23, 1980, Dr. Monaco discharged plaintiff with a diagnosis of "epigastric pain, etiology undetermined and superficial antral gastritis." TR at 348.

Plaintiff was also treated by psychiatrist Dr. Patrick Cerone from March 1981 to September 1981. In his psychiatric medical report, Dr. Cerone described plaintiff's mood and affect as anxiety and depression, and he noted that her scensorium and intellect was clear, her judgment and insight was good, she had no problems with respect to her personal habits, daily activities, and interests, and she had a good manner of relating to others. She had no problem with her personal habits, in her daily activities, or in her ability to relate to others. TR at 355. On September 3, 1981, Dr. Cerone diagnosed plaintiff with psychophysiologic cardiac and GI disorder with anxiety and depression.

//

### b. Consulting Physicians

On May 29, 1981, Dr. Arnold Miles examined plaintiff. Dr. Miles conducted a cardiac stress test which had to be terminated after 4 minutes because plaintiff complained of light-headedness, tiredness, and severe fatigue. Dr. Miles concluded that the cardiac stress test was supportive of ischemic heart disease. Dr. Miles also conducted a residual functional capacity ("RFC") assessment.

An analyst from the NYS Bureau of Disability Determinations issued a medical evaluation on June 16, 1981. The analyst stated that plaintiff's severe impairment was short of any impairment in the Listings and that plaintiff had an RFC for light activity.

Dr. A. Jordan issued an Office of Disability Operations Medical Consultant's Case Analysis on July 17, 1981. Dr. Jordan stated that plaintiff's stress test was "submaximal, there was no chest pain but S-T depression is noted in the recovery phase." Id. Dr. Jordan further stated that plaintiff could sit for 6 hours, stand for 6 hours, and lift 10 pounds.

An analyst from the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations responded to a Request for Medical Advice on July 30, 2001. The analyst reviewed plaintiff's medical records for the period of December 1980 to May 1982 and "didn't find a severe impairment from a medical point of view." TR at 155-56.

### c. Medical Expert's Testimony

At the administrative hearing, the ALJ asked medical expert Dr. West to give an overview of plaintiff's cardiological state from December 1980 to May 1982. At the time of the hearing, Dr. West only had medical records up to 1981. Id. Despite the missing medical records from '83, '84, and '85, the ALJ decided to hear the testimony that Dr. West could give based on the medical records before him. The ALJ left the record open to request the missing medical records from '83, '84, or '85.

Dr. West testified that plaintiff's severe impairments were unexplained chest pains and physical deconditioning. Dr. West explained that it was not clear "whether the chest pain is causing [plaintiff] the aggravation or the aggravation is causing the chest pain." TR at

404. When asked by the ALJ whether plaintiff met or equaled any of the conditions outlined in the Listing of Impairments, Dr. West stated that he could not find a significant cardiac problem, other than the unexplained chest pain, during the time frame of December 1980 to May 1982.  When the ALJ asked Dr. West if he could reasonably come up with a functional assessment during the period in question, Dr. West testified that although plaintiff is deconditioned, she did not have a major physical limitation and could perform sedentary to light work.

### 4. Vocational Expert

The ALJ asked the Vocational Expert ("VE") to assess plaintiff's past work in terms of exertion and skill level.  The VE testified that the job plaintiff described as "Girl Friday" was an atypical job and not described in the Dictionary of Occupational Titles ("DOT"). Based on plaintiff's description of her job duties, the VE stated that plaintiff's job included duties of an insurance clerk, insurance benefits clerk, insurance checker, and administrative assistant.  The VE noted that all of these jobs are performed at the sedentary level throughout the national economy.

## II.  STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record.  42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The same standard applies where the ALJ has awarded benefits and the claimant seeks additional benefits, as in this case.  See Swanson v. Secretary of Health and Human Services, 767 F.2d 1061 (9th Cir. 1985).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  Id.; Magallanes, 881 F.2d at 750.  The

decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040.

## III.  DISCUSSION

### A.     The ALJ's Decision

In considering whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At the first step, the ALJ considers if the claimant is engaged in substantial gainful activity. If the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment (i.e., an impairment that has a significant effect on the claimant's ability to function). If the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"). If the claimant does not have such a condition, the fourth step asks if the claimant is capable of performing her past relevant work. If the claimant is not capable of performing her past relevant work, the fifth step asks if the claimant is capable of performing other work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-(f); § 416.920(b)-(f).

Here, the ALJ found that during the period in question, beginning December 1980 through May 1982, plaintiff retained the RFC to perform her past relevant work. At step one, the ALJ found that the plaintiff had not been engaged in any substantial gainful activity during December 1980 through May 1982. At step two, the ALJ found that plaintiff did have a "severe" impairment of non-specific chest pains and physical deconditioning that "may have imposed more than a slight limitation on her ability to perform the basic work related activities described at 20 C.F.R. 404.1521(b)." TR at 81. At step three, the ALJ found that plaintiff did not establish any impairment or impairments that met or equaled the criteria of any impairment in the Listings set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. during the period in question. At step four, the ALJ found plaintiff had the RFC for sedentary to light work and could perform her past relevant work as generally required by employers throughout the national economy. The ALJ concluded that plaintiff was not under a

disability within the meaning of the Act, as amended, during the period beginning December 1980 and ending May 1982.

Plaintiff bears the burden of establishing that the ALJ's decision was not based on substantial evidence or that the ALJ's decision was based on legal error. See generally Andrews, 53 F.3d at 1039; Magallenes, 881 F.2d at 750.

**B.      Whether the ALJ Failed to Consider Plaintiff's Mental Impairment**

Plaintiff first contends that the ALJ committed legal error by failing to consider her mental impairment. Specifically, plaintiff argues that the ALJ legally erred by failing to find and consider her mental impairment of "psychophysiologic cardiac and GI disorder with anxiety and depression." Plaintiff did not claim a mental impairment in her application or at the administrative hearing, although she claims that references to a possible psychological basis for her physiological symptoms in her medical records were likely sufficient to alert the ALJ of her alleged mental impairment. Notably, plaintiff does not allege in any of the pleadings that she actually meets or equals any of the Listings.

At step two, the applicable regulations state that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as including physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, 20 C.F.R. § 404.1521(b)(1); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6).

At step three, the ALJ must explain adequately whether a claimant's impairment(s) meets or is medically equivalent to the criteria of any impairment in the Listings. 20 C.F.R. §§ 404.1525 (d), 404.1526(a); see Marcia v. Sullivan, 900 F.2d 172, 175-76 (9th Cir. 1990). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). This does not mean, however, that the ALJ must "state why a claimant failed to

7

1  satisfy every different section of the listing of impairments." Gonzales v. Sullivan, 914 F.2d
2  1197, 1201 (9th Cir. 1990) (finding that a four-page "evaluation of the evidence" provided an
3  adequate statement). Furthermore, an ALJ is not required to discuss the combined effects of
4  a claimant's impairment where the claimant offers "no theory, plausible or otherwise, as to
5  how [his or her impairment(s)] combined to equal a listed impairment." Lewis, 236 F.3d at
6  514.

7        Under the circumstances in this case, the ALJ did not commit reversible error by not
8  considering plaintiff's alleged mental impairment. As noted above, while Dr. Cerone stated
9  that plaintiff's presenting problem was psychophysiologic cardiac and G.I. disorder with
10 anxiety and depression, he also reported that plaintiff had clear sensorium and intellect, good
11 insight and judgment, no problems in her personal habits and daily activities, and had a good
12 manner of relating to others. Dr. Jordan's consultative report noted that plaintiff could sit for
13 six hours, stand for six hours, and lift ten pounds, and made no mention of a mental
14 impairment. On the July 30, 2001 Request For Medical Advice, the analyst concluded "I
15 didn't find a severe impairment from a medical point of view." TR at 156. These reports
16 indicate that even if plaintiff did have a mental impairment, it did not rise to the level of a
17 severe mental impairment because it did not limit her ability to do basic work activities.
18 Moreover, Dr. West testified that plaintiff's medically determinable impairments were
19 unexplained chest pains and physical deconditioning, and he did not mention that plaintiff
20 suffered from a mental impairment. Given the substantial weight of the medical records and
21 Dr. West's testimony, the ALJ's finding was supported by substantial evidence.

22       A remand for explicit consideration of plaintiff's mental impairment would not affect
23 the outcome of this case. Plaintiff does not explain how her mental impairment, in
24 combination with her medically determinable impairments of non-specific chest pains and
25 physical deconditioning, would meet or equal any impairment in the Listings. See Lewis,
26 236 F.3d at 514. Plaintiff does not specify which listing she believes she meets or equals,
27 and does not set forth any evidence which would support the diagnosis and findings of a
28 listed impairment. See 20 C.F.R. § 404.1525(d). Furthermore, the ALJ relied on Dr. West's

8

opinion "that the medical evidence in the record does not contain objective signs and findings to establish that the claimant's impairments, either alone or in combination, meet or equaled the criteria of any listed impairment during the period in time at issue." TR at 82. Dr. West was aware that there could possibly be a psychosomatic basis for plaintiff's symptoms, yet this did not change his conclusion that plaintiff's impairments did not meet or equal any of the criteria in the Listings. In fact, Dr. Cerone's psychiatric medical report did not mention any mental functional limitations. And finally, the ALJ stated that he reviewed all evidence of record, including exhibits, the testimony given at the hearing, and the arguments made by the claimant's representative, in making his findings. Thus, by relying on Dr. West's testimony and the evidence of the record, the ALJ provided an adequate explanation for finding that plaintiff did not have any impairments which met or equaled any of the criteria in the Listings. Accordingly, the ALJ did not err by failing to consider plaintiff's mental impairment.

### C. Whether the ALJ Improperly Assessed Plaintiff's Residual Functional Capacity

Plaintiff also alleges that the ALJ's RFC assessment is legally flawed and led to an erroneous finding that plaintiff could perform her past relevant work. Specifically, she asserts that the ALJ (1) did not comply with Social Security Rulings ("SSRs") in assessing her functional limitations; (2) failed to perform a function-by-function assessment; and (3) did not consider plaintiff's statements and testimony or provide reasons for discrediting her statements and testimony.

#### 1. Social Security Rulings

Defendant contends that plaintiff's reliance on SSRs cannot establish legal error because SSRs are not binding law. This contention is fatally flawed.

"Social Security rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations." Chavez v. Department of Health and Human Services, 103 F.3d 849, 851 (9th Cir. 1996) (citing Paulson v. Bowen, 836 F.2d 1249, 1252 n. 2 (9th Cir. 1988)). SSRs are interpretive rulings and do not have the same force and effect as the law or regulations. Paxton v. Secretary of Health and Human Servs.,

9

856 F.2d 1352, 1356 (9th Cir. 1988). However, courts defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations. Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Accordingly, this Court considers the SSRs as valid interpretations of Social Security laws and regulations and will defer to SSRs as precedent in adjudicating this case.

**2. Function-by-Function Assessment**

Plaintiff asserts that the ALJ assessed her RFC for the exertional demands of work in categorical terms instead of providing a function-by-function assessment, as required by SSR 96-8p, and further that he failed to provide assessment of her non-exertional RFC.

At step four in the sequential process, the Commissioner examines the claimant's RFC and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The SSRs require that the ALJ undertake a "function-by-function" assessment of the claimant's capacity to work according to exertional categories.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.946. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (July 2, 1996).

To find that the claimant is not disabled at step four, the claimant must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). An ALJ may rely on a non-treating, non-examining medical expert's RFC assessment as long as that assessment is not contradicted by all other evidence in the record, is consistent with other evidence, and alone does not constitute substantial evidence to support the Commissioner's determination. See Magallanes, 881 F.2d at 752. The reports of consultative physicians called in by the Commissioner may serve as substantial evidence.

10

See Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984).

In the present case, the ALJ properly relied on Dr. West's testimony that plaintiff had the RFC for sedentary to light work, and his opinion is consistent with other medical evidence and not contradicted by the record. The record contains two function-by-function assessments, one performed by Dr. Miles on May 29, 1981 and another performed by a medical consultant on August 6, 2001. Both RFC assessments contain an evaluation of any possible exertional and non-exertional limitations. For example, Dr. Miles found that plaintiff could sit and stand for 8 hours, walk for 2 hours, occasionally lift up to 10 pounds, frequently carry up to 10 pounds, and frequently bend, squat, crawl and climb. Dr. Miles noted that plaintiff was "occasionally depressed" and was taking medication, but had no sensory or environmental limitations. The August 6, 2001 RFC assessment contained similar findings, stating that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and had unlimited ability to push and/or pull. The RFC assessment further noted that plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. The medical consultant noted that it's findings were substantiated by a prior treating/examining source conclusions about plaintiff's limitations. Indeed, the ALJ did not rely on Dr. West's testimony alone to find that plaintiff had the RFC for sedentary to light work.

Although the ALJ did not engage in an explicit function-by-function analysis, he did consider all the appropriate evidence in the record, including both medical consultants' function-by-function assessments, in making his finding. A reviewing court may use its own faculties for drawing specific and legitimate inferences from the ALJ's opinion. Magallanes, 881 F.2d at 752. Taking into account the substantial weight of the medical evidence and Dr. West's testimony, the ALJ was warranted in finding that plaintiff had the RFC for sedentary to light work, as defined at 20 C.F.R. § 404.1567(a) and (b). The ALJ properly relied on the function-by-function assessment conducted by the consulting physicians and was not required to repeat the exercise. Accordingly, the ALJ did not err by failing to conduct a

function-by-function assessment.

### 3. Consideration of Plaintiff's Statements and Testimony

Plaintiff asserts that the ALJ failed to consider her statements and testimony in assessing the severity of her limitations.

"In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1991) analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The Cotton standard requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptoms. Id. "Once a claimant meets the Cotton test and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Id. at 1284. The Ninth Circuit has consistently held that "[t]he ALJ is responsible for determining credibility and resolving conflicts in medical testimony." Magallenes, 881 F.2d at 750; see also Allen v. Heckler, 749 F.2d 577, 580 n.1 (9th Cir. 1985) ("questions of credibility and resolutions of conflicts in the testimony are functions solely for the [Commissioner]").

The ALJ rejected plaintiff's statements and testimony because he did not find them to be credible or supported by the medical evidence. The ALJ's opinion contains a lengthy description of plaintiff's statements and testimony, and he credited her complaints of pain and other symptoms to the extent that it was consistent with his decision. The ALJ explained that he based his "decision primarily on the testimony of the medical expert as I found his testimony to be corroborated by the medical evidence." TR at 82. Dr. West testified that although it wasn't clear "whether the chest pain is causing her the aggravation or the aggravation is causing the chest pain," he saw no major physical limitation preventing plaintiff from returning to work. TR at 404. The ALJ further explained that he discredited plaintiff's testimony because plaintiff was "in no apparent distress . . . had no problems sitting, walking or testifying . . . was articulate in her responses and had no difficulty with her

memory." TR at 83. The ALJ considered plaintiff's appearance at the hearing, along with all the other evidence of the record, in making his credibility assessment. The medical evidence, including the two consultative physician's RFC assessments and Dr. Cerone's medical opinion that plaintiff had no mental functional limitations, contradicted plaintiff's allegations of disabling subjective symptoms.

It is clear from the ALJ's opinion that he considered plaintiff's statements and testimony, and based on the the medical expert's testimony and the substantial medical evidence, he found plaintiff's complaints of disabling subjective symptoms not credible. "Where [] the ALJ has made specific findings justifying a decision to disbelieve a subjective symptom allegation [], and those findings are supported by substantial evidence in the record, [the reviewing court] is not to "second-guess" that decision. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). Accordingly, the ALJ properly discredited plaintiff's statements and testimony of subjective symptoms, and his decision is supported by substantial evidence.

**D.    Whether the ALJ Improperly Assessed Plaintiff's Ability to Return to her Past Relevant Work**

Plaintiff finally contends that the ALJ committed reversible error by finding that she could perform her past relevant work.

A claimant bears the initial burden of establishing a prima facie case of disability by showing that a physical or mental impairment prevents her from engaging in previous occupations. Allen v. Secretary of Health and Human Serv., 726 F.2d 1470, 1472 (9th Cir. 1984). If the Commissioner determines that a claimant retains the RFC to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy, then the claimant will not be found disabled. See SSR 82-61. The Ninth Circuit does not require explicit findings regarding a claimant's past relevant work both as generally and actually performed. Pinto, 249 F.3d at 845. The VE merely has to find that a claimant can or cannot continue his or her past relevant work. Id. (citing Villa v. Heckler, 797 F.2d 794, 798 (1986) ("the claimant has the burden of proving an inability to return to his former

13

type of work and not just to his former job")).

The ALJ properly found that plaintiff could return to her past relevant work as a "Girl Friday" and insurance clerk. The VE testified that plaintiff's job as a "Girl Friday" was a very atypical job and is not described in the DOT. After discussing with plaintiff her job duties, the VE identified a number of jobs, listed in the DOT, which best conformed to plaintiff's description of her past relevant work. These jobs included insurance clerk, insurance benefits clerk, insurance checker, and administrative assistant, all of which are sedentary jobs. Based on Dr. West's opinion that plaintiff had the RFC for sedentary to light work, the ALJ found that plaintiff was able to do her past relevant work, as that type of work is generally performed. Thus, the ALJ's finding that plaintiff could perform her past relevant work is supported by substantial evidence.

Plaintiff has not met her burden of proving that her physical or mental impairments prevented her from returning to her past relevant work. As noted above, the ALJ properly discredited plaintiff's subjective symptom testimony. Accordingly, the ALJ properly assessed plaintiff's ability to return to her past relevant work, and this finding is supported by substantial evidence.

## IV. CONCLUSION

The ALJ did not commit legal error in reaching his decision. Rather, the ALJ gave specific, legitimate reasons for his determinations based on substantial evidence in the record and properly concluded that plaintiff was not disabled under the Act during the period of December 1980 through May 1982.

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendant's cross-motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: May 4, 2005

/s/
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE